# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LPOD, Inc., a California Corporation, dba, Las Palmas Oil & Dehydration; and MICHAEL J. PORTER, an individual, BRYAN PORTER, an individual, and M&W PROPERTIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>KINDER MORGAN LIQUIDS TERMINALS, LLC; and DOES 1 through 25, inclusive,<br><br>Defendants. | No. 1:23-cv-01498-KES-CDB<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>(Doc. 26) |

Following defendant Kinder Morgan Liquids Terminals, LLC's ("Kinder Morgan's") removal of this state tort action pursuant to section 1503 of the Energy Policy Act of 2005, Doc. 1 ("Not. Removal"), plaintiffs LPOD, Inc. ("LPOD"), Michael J. Porter, Bryan Porter, and M&W Properties, LLC moved to remand to Kern County Superior Court on the grounds that Kinder Morgan's removal was untimely.[1]  Doc. 26 ("MTR").  For the reasons explained below, the Court denies plaintiffs' motion to remand.

---

[1] Plaintiff Michael J. Porter is the president of LPOD. SAC ¶¶ 3–4.  Plaintiff Bryan Porter is an officer of LPOD. *Id.* ¶ 4.  Plaintiff M&W Properties, LLC is the owner of the land that was leased to LPOD for its Kern County facility. *Id.* ¶ 5.

I.   **Background**[2]

LPOD operated a facility in Kern County, California, where it dehydrated off-specification streams of petroleum materials and recycled those materials into reusable products. Doc. 1-1, Ex. C ("SAC") ¶¶ 1–2.  LPOD's facility was never authorized to treat, store, or dispose of "hazardous waste" as that term is defined in the California Hazardous Waste Control Act ("CHWCA").  *Id.* ¶¶ 10, 19–23; *see also* Cal. Health & Safety Code § 25117 (defining "hazardous waste").[3]

Defendant Kinder Morgan is an energy infrastructure company that operates petroleum pipelines and terminals throughout the United States.  *Id.* ¶ 6.  Kinder Morgan's terminal in Carson, California, ("Carson Terminal") is a hazardous waste remediation site which has been under a Cleanup and Abatement Order ("CAO") from the Los Angeles Regional Water Quality Control Board since 1990 due to leaks from petroleum storage tanks that contaminated the soil and groundwater below.  *Id.* ¶ 12; Doc. 32 ("Opp'n") at 7 n.3.  As part of the remediation process, Kinder Morgan operates a system which extracts the leaked, free-floating petroleum (which the parties refer to as Light Non-Aqueous Phase Liquid ("LNAPL")) from the groundwater below Carson Terminal.  *Id.* ¶ 13.

The California Department of Toxic Substances Control ("DTSC") categorizes each regulated toxic substance as either "hazardous waste" or "retrograde material," depending on, among other things, its precise chemical makeup.[4]  *See, e.g.*, Opp'n at 7 n.4.  Significantly,

---

[2] The facts recited here are not in dispute, and the Court may "consider[] evidence outside the pleadings when ruling on a motion to remand—even in the context of federal question jurisdiction." *Vegas Fab & Finish v. AMG Freight LLC*, 2024 WL 166759, at *3 n.2 (D. Nev. Jan. 16, 2024); *see Hansen v. Group Health Cooperative*, 902 F.3d 1051, 1056–57 (9th Cir. 2018) (defendants must establish basis for removal by a preponderance of the evidence).

[3] Pursuant to CHWCA, a waste is a "hazardous waste" if: (1) it "meets any of the criteria for identification of a hazardous waste adopted by the [Department of Toxic Substances Control] for the identification of hazardous waste"; (2) it is a hazardous waste listed by the U.S. Environmental Protection Agency ("EPA") pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. ch. 89, § 6901 *et seq.*; or (3) it is an "extremely hazardous waste or acutely hazardous waste."  Cal. Health & Safety Code § 25117.

[4] Methyl tertiary butyl ether ("MTBE") is not expressly listed as a "hazardous waste" by EPA or

1 LNAPL may—but does not always—contain a chemical known as methyl tertiary butyl ether

2 ("MTBE"), a chemical that California banned for sale and use in gasoline in December 1999,[5] *id.*

3 at 6 n.1. *See* Opp'n at 7 n.4. DTSC categorized Kinder Morgan's LNAPL as hazardous waste,

4 *id.*, for reasons not fully explained in the parties' briefs and exhibits.[6]

5 Plaintiffs allege that, prior to 2016, Kinder Morgan properly handled and treated the

6 recovered LNAPL as hazardous waste, as DTSC required. SAC ¶ 18; Doc. 26-1 ("Moss Decl.")

7 ¶ 5. The fact that DTSC classified Kinder Morgan's LNAPL as "hazardous waste" rather than

8 "retrograde material" meant that Kinder Morgan was required to comply with more stringent and

9 costly regulations, such as shipping the LNAPL only to facilities permitted by DTSC to treat,

10 store, or dispose of hazardous waste, among other things. *See* SAC ¶¶ 18–19. During the period

11 prior to 2016 in which Kinder Morgan treated the LNAPL as hazardous waste, plaintiffs contend

12 that Kinder Morgan attempted on numerous occasions to persuade regulators to recategorize the

13 LNAPL as retrograde material rather than hazardous waste. Moss Decl. ¶¶ 6–10. Each time,

14 regulators declined to recategorize Kinder Morgan's LNAPL. *Id.*

---

DTSC. *See* 40 C.F.R. § 261; 22 C.C.R. §§ 66261.30–66261.50. However, the parties' briefings suggest that under some circumstances, MTBE could meet the criteria for identification of hazardous waste set by DTSC. *See* MTR at 7–11. Prior to 2008, at least, Kinder Morgan treated the LNAPL recovered from Carson Terminal, which contained MTBE, as a hazardous waste because it exhibited the characteristic of "ignitability" under 22 C.C.R. § 66261.21(a)(1). Moss Decl., Ex. 1, ("Charles Corcoran Email"), at 380, 383.

[5] The California Air Resources Board promulgated regulations requiring the elimination of MTBE's use in fuel and gasoline in 2002. *Staff Report: Proposed Amendments to the California Phase 3 Reformulated Gasoline Regulations*, California Air Resources Board (Oct. 25, 2002), https://ww2.arb.ca.gov/sites/default/files/barcu/regact/mtberesid/isor.pdf. The California State Water Resources Board thereafter began to regulate MTBE levels in drinking water. *See MTBE: Regulations and Drinking Water Monitoring Results*, California State Water Resources Board (July 22, 2024),
https://www.waterboards.ca.gov/drinking_water/certlic/drinkingwater/MTBE.html.

[6] Plaintiffs cite to evidence that, prior to 2008, LNAPL which contained MTBE was classified as a hazardous waste because it exhibited the characteristic of "ignitability" under 22 C.C.R. § 66261.21(a)(1). Moss Decl., Ex. 1, ("Charles Corcoran Email"), at 380, 383. It is not clear that Kinder Morgan continued to treat the LNAPL as a hazardous waste for this reason after 2008, nor is it clear that MTBE had anything to do with the LNAPL's classification as hazardous waste. As Kinder Morgan points out, "LPOD's allegations and . . . discovery inquiries [prior to September 22, 2023,] centered on LNAPL and not MTBE." Opp'n at 7 n.4.

Plaintiffs allege that after Kinder Morgan failed to have LNAPL recategorized, in 2016 Kinder Morgan sought to avoid the costly DTSC regulations by secretly labelling the recovered LNAPL hazardous waste as "retrograde material" and shipping it to plaintiffs' facility.  Doc. 1-1, Ex. A ("Compl.") ¶ 10.  Plaintiffs' facility was not authorized to accept hazardous waste.  SAC ¶¶ 10, 19–23.  Plaintiffs allege that they unwittingly received a total of 181,349 gallons of such hazardous waste through 66 separate shipments.  *Id.* ¶¶ 20–21.

DTSC issued a Statement of Violations ("SOV") against LPOD and its owner, Michael J. Porter, when it discovered the hazardous waste present on plaintiffs' property.  *Id.* ¶ 21.  The SOV requires plaintiffs to remediate the hazardous waste contamination at their facility—an operation which plaintiffs estimate will cost $29,750,000—in addition to paying fines of $70,000 per day which are assessed retroactively to the day when plaintiffs began to receive LNAPL from Kinder Morgan.  *Id.*  As a result of DTSC's enforcement action, LPOD ceased operations and may not re-open until it fulfills the requirements of DTSC's cleanup order.  *Id.* ¶ 32.

On October 26, 2020, plaintiffs filed this action in Kern County Superior Court, asserting state common law claims of intentional misrepresentation, negligent misrepresentation, fraudulent concealment, negligence, and trespass.  *Id.* ¶¶ 27–72.  In plaintiffs' complaint, first amended complaint, and second amended complaint, all of which were filed prior to removal, plaintiffs alleged only that Kinder Morgan shipped LNAPL that DTSC categorized as "hazardous waste" to their facility.  Not. Removal ¶ 3.  Plaintiffs did not specify the chemical components of the LNAPL "hazardous waste" they received.  *Id.*  Plaintiffs never asserted that the LNAPL contained MTBE or that MTBE contaminated their property.  *Id.*

On October 20, 2023, Kinder Morgan removed the action to this Court pursuant to section 1503 of the Energy Policy Act of 2005, a statute which permits removal of any action "related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE)."  *Id.* ¶ 1; Energy Policy Act of 2005, 119 Stat. 594, 1076 (2005) (*reprinted in* 42 U.S.C. 7545, 2005 Amendments) ("Section 1503").  Kinder Morgan contends that a notice of deposition of DTSC, served on Kinder Morgan by plaintiffs on September 22, 2023, alerted Kinder Morgan

4

1  that plaintiffs now alleged that MTBE was present in the shipments they received and
2  contaminated their property. *Id.*

3  Plaintiffs do not contest that section 1503 establishes a basis for removal in this case, but
4  they move to remand on the grounds that Kinder Morgan's removal was untimely. MTR. Kinder
5  Morgan filed an opposition, Opp'n, and plaintiffs filed a reply, Reply. On September 5, 2024,
6  Kinder Morgan filed a motion for leave to file a supplemental opposition to plaintiffs' motion to
7  remand, arguing that plaintiffs' conduct during discovery constituted a waiver of their previous
8  objections to the timeliness of Kinder Morgan's removal. Doc. 47 ("Mot. for Leave"). Plaintiffs
9  filed an opposition. Doc. 50.

10 **II.     Legal Standard**

11  28 U.S.C. § 1446(b) establishes a thirty-day deadline to remove a case from state court to
12  federal court. There are two "pathway[s] to removal." *Dietrich v. Boeing Co.*, 14 F.4th 1089,
13  1090 (9th Cir. 2021). First, the thirty-day deadline will start if "a copy of the initial pleading
14  setting forth the claim for relief" demonstrates the grounds for removal. 28 U.S.C. § 1446(b)(1).
15  Alternatively, if the initial pleading does not indicate the case is removable, the thirty-day
16  deadline for removal begins to run when the defendant receives "a copy of an amended pleading,
17  motion, order or other paper from which it may first be ascertained that the case is one which is or
18  has become removable." 28 U.S.C. § 1446(b)(3). The term "other paper," as used in section
19  1446(b)(3), includes discovery documents like responses to interrogatories and deposition
20  testimony. *See Carvalho v. Equifax Info. Serv., LLC*, 629 F.3d 876, 886–87 (9th Cir. 2010).

21  A court must determine whether a case is removable "through examination of the four
22  corners of the . . . pleadings, [motions, orders, or other papers], not through [the defendant's]
23  subjective knowledge . . . ." *Harris v. Bankers Life Ins. and Cas. Co.*, 425 F.3d 689, 694 (9th Cir.
24  2005). Courts do not examine the subjective knowledge of the defendant because that inquiry
25  could "degenerate into a mini-trial regarding who knew what and when." *Id.* (quotations
26  omitted). The examination of the pleadings, motions, orders, or other papers must make it
27  "unequivocally clear and certain" that the grounds for removal exist before the thirty-day deadline
28  for removal will begin. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 (9th Cir. 2021). This bright-

line approach helps "avoid gamesmanship in pleading, preventing plaintiffs from strategically starting the removal clock without the defendant's realization, [but still allows] plaintiffs to start the clock . . . simply by making the basis for removal unequivocally clear and certain." *Id.* at 1094 (quoting *Harris*, 425 F.3d at 697).

**III.   Discussion and Analysis**

    **a.   Timeliness of Kinder Morgan's Section 1503 Removal**

Section 1503 of the Energy Policy Act of 2005 provides that "[c]laims and legal actions filed after the date of enactment of this Act related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States district court." Energy Policy Act of 2005, 119 Stat. 594, 1076 (2005) (*reprinted in* 42 U.S.C. 7545, 2005 Amendments) ("Section 1503"). The parties do not dispute that section 1503 provides an independent basis for removal. *See* Opp'n at 6; Reply at 5. Rather, the parties dispute the timeliness of Kinder Morgan's removal. *See id.*

Plaintiffs' three complaints alleged that Kinder Morgan extracted LNAPL from Carson Terminal and labeled it "retrograde material," when it should have been labelled as "hazardous waste." *See, e.g.*, SAC ¶¶ 15–22. Plaintiffs did not define "hazardous waste" and did not specify its chemical components. *See id.* None of the three complaints made any reference to MTBE, *see id.*, and plaintiffs did not concede that the case "related to allegations involving . . . contamination of MTBE" until Kinder Morgan removed the action to this court, *see* MTR at 13.

Kinder Morgan filed its notice of removal on October 20, 2023, following plaintiffs' service of a notice of deposition of DTSC on September 22, 2023. Not. Removal ¶ 1. The notice of deposition identifies four topics of examination, the first two of which are:

> 1. The classification of fuel containing METHYL TERT-BUTYL ETHER ("MTBE") in California from January 1, 2000 through the date of the deposition. Specifically, **when fuel and/or gasoline containing any MTBE became Retrograde Material, and when fuel and/or gasoline containing any MTBE ceased being Retrograde Material and become Hazardous Waste** pursuant California law.
>
> 2. The classification of Retrograde Material by The California Department of Toxic Substances Control from January 1, 2000 through the date of the deposition. Specifically, **how the DTSC**

6

> determines and assesses whether something is Retrograde Material or Hazardous Waste.

Doc. 1-1, Ex. D ("Not. Dep.") at 57–58.

The notice of deposition also includes the following request for production of documents:

> All written policies, procedures, guidelines, and/or information sheets whether published on paper, or digitally regarding **the classification of fuel and/or gasoline containing METHYL TERTBUTYL ETHER ("MTBE")** created by the California Department of Toxic Substances Control or used by the California Department of Toxic Substances Control in effect from January 1, 2000 through the date of the deposition. Specifically, all documents on **how gasoline and/or fuel containing MTBE should be classified and/or treated after January 1, 2003, and when did gasoline and/or fuel cease being considered a "Retrograde Material"** as defined in Health & Safety Code § 25151.5.

*Id.*

The September 22, 2023, notice of deposition was the earliest time the grounds for removal could have become unequivocally clear and certain, because this was the first time that any discovery document arguably made clear that plaintiffs considered both the "retrograde material" and "hazardous waste," which were terms plaintiffs used in their various complaints, to contain MTBE. Given that plaintiffs alleged in each of their complaints that "hazardous waste" contaminated their property, and now appeared to indicate that the "hazardous waste" contained MTBE, it became clear that the case involved "allegations involving actual or threatened contamination of" MTBE. Section 1503. This discovery document was sufficient to put Kinder Morgan on notice that the case was removable under section 1503. As Kinder Morgan filed its notice of removal within thirty days of its receipt of this discovery document, its removal was timely. *See* Not. Removal.

In an attempt to establish that the removal clock began sooner, plaintiffs point to numerous other discovery documents which mentioned MTBE and were served on Kinder Morgan prior to the notice of deposition. *See* MTR at 6–13. However, no prior mention of MTBE in the other discovery documents established that MTBE was in the LNAPL delivered to plaintiffs' facility or that plaintiffs considered MTBE to be a component of the "hazardous waste"

7

1   that contaminated their property. *See Dietrich*, 14 F.4th at 1091 ("[The] removal clock does not
2   start until a paper makes a ground for removal unequivocally clear and certain.").

3         Plaintiffs principally argue that a set of requests for admission and the deposition of
4   Kinder Morgan's former attorney, Katherine Wagner, put Kinder Morgan on notice that the case
5   was removable. *See* MTR at 16–17. Request for Admission No. 39 reads: "Admit that at all
6   times that YOU SOLD PRODUCT to plaintiff, YOU knew California prohibited the sale of
7   gasoline containing methyl tert-butyl ether (MTBE) without exception." *Id.* at 17 (quoting
8   Requests for Admission). Request for Admission No. 40 reads: "Admit that nothing in Exhibit 1
9   authorizes YOU to sell gasoline containing methyl tert-butyl ether (MTBE) to businesses not
10  authorized to receive HAZARDOUS WASTE." *Id.*

11        There are several problems with plaintiffs' argument that the Requests for Admission
12  should have put Kinder Morgan on notice that the case contained "allegations involving actual or
13  threatened contamination of" MTBE. Section 1503. First, although plaintiffs included
14  definitions of the capitalized terms in the requests for admission, they did not define
15  "HAZARDOUS WASTE" to include MTBE. *See* MTR at 16–17. Plaintiffs defined
16  "PRODUCT" as a range of different materials: "light non-aqueous phase liquid (LNAPL), water,
17  gasoline-free product, spill residue, fuel, diesel fuel, gasoline-free product containing methyl
18  tertiary butyl ether (MTBE), petroleum, water containing gasoline residue, ***or*** wastewater." *Id.*
19  (emphasis added). Although there is one reference to MTBE within the definition, plaintiffs use
20  the term "or" in separating the range of substances that could fall within the definition of
21  "PRODUCT." *See id.* As Kinder Morgan noted in its objection to these requests for admission,
22  the definition "identifies numerous materials that are distinct from one another (e.g., water and
23  wastewater) and are unrelated to Kinder Morgan's recovered gasoline product. Accordingly, the
24  definition of 'PRODUCT' renders this request both compound and vague and ambiguous." Moss
25  Decl., Ex. 8 ("Response to Requests for Admission"). Given the ambiguity about what plaintiff
26  believed the "PRODUCT" to be, it could not have been unequivocally clear and certain from the
27  single reference to MTBE that plaintiffs were alleging that the LNAPL included MTBE.

28        Second, none of the requests for admission assert that MTBE *contaminated* plaintiffs'

property, as required by the statute to make the case removable. *See* Requests for Admission at 111–14. The complaint states only that "hazardous waste" contaminated plaintiffs' property, and the requests for admission do not make the necessary connection between MTBE and the "hazardous waste" plaintiffs received.

Third, the fact that Request for Admission No. 39 conveys that California banned MTBE does not necessarily indicate that plaintiffs understood the term "hazardous waste" to include MTBE. Under California law, a material may qualify as "retrograde material" if it is "banned by law, regulation, ordinance, or decree." Cal. Health & Safety Code § 25121.5. Request for Admission No. 39 would thus be compatible with an understanding that a substance which contains MTBE is retrograde material because it is banned. Plaintiffs' facility accepted retrograde material, *see* Doc. 1-1, Ex. A ¶ 10, and plaintiffs complained only of contamination by hazardous waste, not retrograde material. Request for Admission No. 39 therefore does not make clear that plaintiffs were alleging that MTBE was a component of the hazardous waste that they received.

Plaintiffs also point to the deposition of Katherine Wagner on April 19, 2023, as putting Kinder Morgan on notice of their allegations regarding MTBE. In that deposition, plaintiffs asked questions about conversations Wagner had with Charles Corcoran, an official at DTSC, in 2008 regarding whether LNAPL containing MTBE could be classified as retrograde material. *See* Wagner Depo. During that deposition, plaintiffs asked questions suggesting they knew that MTBE had been in the LNAPL at some point. *See id.*

There are two primary reasons that the deposition of Ms. Wagner did not reveal that the case involved allegations of contamination with MTBE, as required to establish a basis for removal under section 1503. First, plaintiffs did not ask Ms. Wagner questions about whether the LNAPL they received eight years after her conversation with Charles Corcoran contained MTBE. *See id.* Similarly, they did not ask whether the level of MTBE in the groundwater at Carson Terminal may have changed over time. *See id.* If they had asked whether the level of MTBE was the same in 2008 and 2016, when they began receiving shipments of LNAPL, there may have been some suggestion that they were alleging contamination of MTBE on their property. Instead,

9

the questions plaintiffs asked could be construed to be simply gathering background information. Plaintiffs' deposition questions did not reveal any allegation that MTBE had contaminated their property.

Second, plaintiffs did not ask whether material with MTBE could be classified as hazardous waste, and their questions of Ms. Wagner did not demonstrate that they were making that allegation. Plaintiffs made the connection between MTBE and hazardous waste only when they served the notice of deposition which asked "when fuel and/or gasoline containing any MTBE ceased being Retrograde Material and [became] Hazardous Waste pursuant [to] California law." Not. Dep. at 57.

The other documents that plaintiffs argue put Kinder Morgan on notice that the case was removable are similarly unavailing. For example, they point to a declaration from Kinder Morgan's attorney stating that "gasoline from Kinder Morgan is known to contain" MTBE. Doc. 3-3, Ex. 47. This declaration did not render the case removable, because it came from Kinder Morgan, not plaintiffs. A case becomes removable only when "plaintiff[s] do[] something *voluntarily* to change the nature of the case and render it removable." *Bath v. Millenium Eng'g & Integration Co.*, No. 1:22-cv-01298-ADA-CDB, 2023 WL 1315419, at *6 (E.D. Cal. Jan. 31, 2023) (citing *Self v. Gen. Motors Corp.*, 588 F.2d 655, 657–68 (9th Cir. 1978)). "Only changes over which plaintiff[s] [have] control can affect removability as plaintiff[s] [are] the 'master of the claim' for removal purposes." *Id.*

Ultimately, the discovery documents that plaintiffs proffer did not clearly and certainly indicate that plaintiffs were alleging that MTBE had contaminated their property. The Ninth Circuit adopted the "unequivocally clear and certain" standard for removal to "bring certainty and predictability to the process of removals; avoid[] gamesmanship in pleading; and avoid[] the spect[er] of inevitable collateral litigation over whether the pleadings contained a sufficient clue, whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Dietrich*, 14 F.4th at 1091 (quoting *Harris*, 425 F.3d at 695). Plaintiffs alleged in each of their complaints only that hazardous waste and LNAPL contaminated their property, without any indication that the LNAPL allegedly contained MTBE. *See* Doc. 1-1, Exs. A–C. Only the notice

of deposition indicated that plaintiffs were alleging MTBE was a component of the hazardous waste they received. The prior discovery documents plaintiffs now point to did not clearly and unequivocally make any such allegation. Kinder Morgan was therefore not on notice of the basis for removal until, at the earliest, it received the September 22, 2023, notice of deposition. Accordingly, Kinder Morgan's removal on October 20, 2023, was timely.

### b. Kinder Morgan's Motion for Leave to File a Supplemental Opposition

Kinder Morgan also moved for leave to file a supplemental opposition to plaintiffs' motion to remand, arguing that, by engaging in discovery in this Court, plaintiffs waived their timeliness objections to Kinder Morgan's removal. Mot. for Leave at 5–6. Given the Court's conclusion above that the motion to remand should be denied on other grounds, Kinder Morgan's motion for leave to file a supplemental opposition is denied as moot.

## V. Conclusion and Order

Based upon the foregoing:

1. Plaintiffs' motion to remand, Doc. 26, is **DENIED**; and
2. Kinder Morgan's motion for leave to file a supplemental opposition, Doc. 47, is **DENIED** as moot.

IT IS SO ORDERED.

Dated:   March 28, 2025

_____
UNITED STATES DISTRICT JUDGE

11